## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRENDA MARTINEZ,** | : | Case No. 1:08-CV-2904 |
| **Plaintiff,** | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| **v.** | : | |
| **CUYAHOGA COUNTY RECORDER'S OFFICE,** | : | **MEMORANDUM AND ORDER** |
| **Defendant.** | : | |

This Court recently conducted a bench trial in the above-captioned case. That trial considered a single issue, whether Plaintiff Brenda Martinez ("Martinez") was denied her constitutional right to procedural due process when she was terminated by Defendant Cuyahoga County Recorder's Office ("Recorder's Office"). For reasons more fully explained below, the Court finds that she was not, and rules in favor of the **DEFENDANT**.

### I. BACKGROUND

#### A. Factual Allegations

On November 6, 2008, Martinez was working in the Cashier's Department in the Recorder's office. Sometime before lunch that day, Martinez commented to a co-worker that it would be difficult for one black man to run the White House, given the number of black people that it takes to operate a White Castle. Martinez and the County Recorder do not agree as to the precise wording of this comment, but neither its substantive meaning, nor the fact that Martinez made the comment in the workplace, is in dispute.

Two employees reported the "White Castle" statement to County Recorder Lillian J. Greene ("Greene"). The first employee, Jerome Gibson ("Gibson"), reported that he overheard a woman on an elevator who, while talking on her cellular telephone, stated that she heard a "curly haired supervisor" in the Recorder's Office make the above statement. The second, Jerome Petro ("Petro"), reported that he had heard the above comment directly from Martinez. Another employee, moreover, reported an additional statement. This employee, Ron Mack ("Mack"), reported that Martinez told Mack that "the White House would now be called the Black House."

After learning of these statements, Greene called Martinez into her office for a meeting. Executive Assistant Doreasa Mack and Personnel Director Mary Walsh ("Walsh") were also present. Greene asked Martinez about the White Castle remark, and Martinez admitted to making such a comment. Green also asked Martinez about the Black House comment, which Martinez denied making. Green then terminated Martinez. The meeting lasted less than 3 minutes. Martinez notes that she was not told who her accuser was, that she was denied the opportunity to present witnesses or evidence, and that she was not allowed to have counsel or another representative during this meeting.

Martinez then brought this action, asserting that she was denied her constitutional right to procedural due process prior to termination from her position as a classified civil employee.

**B. Procedural History**

On December 11, 2008, Martinez filed a complaint asking this Court to restore her to her former position with the County Record. (Doc. 1.) On December 12, 2008, Martinez moved for a temporary restraining order ("TRO") seeking immediate relief. (Doc. 3.) That same day, she also filed a motion for a preliminary injunction. (Doc. 4.)

On December 22, 2008, this Court held a hearing on Martinez's motion for a TRO. (Docs. 7, 11.) The Court denied that motion, but set an expedited briefing schedule combining a trial on the merits with the motion for preliminary injunctive relief, a procedure to which neither party objected.

2

(Doc. 11.)  Although her initial claim asserted not only the procedural due process claim addressed here, but a first amendment claim as well (Doc 1), she withdrew that claim on February 24, 2009, prior to the March 11, 2009 bench trial (Doc. 30).

On April 20, 2009, in light of the parties' need for a quick resolution, this Court entered an order finding for the **DEFENDANT** and only then ordered the parties to submit proposed findings of fact and conclusions of law.  (Doc. 30.)  This order contains the Court's ultimate findings and conclusions in support of its April 20, 2009 merits determination.

### C. Legal Standard

It is well-established that classified civil employees have a constitutionally protected interest in their position.  *See generally Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532 (1985).  This entitles those employees to due process prior to being terminated or demoted.  They are only, however, due a somewhat limited amount of process:

> The essential requirements of due process are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.  The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id*. at 546 (citations omitted).  Indeed, "[o]nly if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a tenured public employee."  *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citation omitted).

Although many courts have held that "[a] brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of Loudermill," it does not appear that most courts have had the opportunity to consider a hearing that was as brief as the hearing in question in this case.  *See, e.g.*, *West v. Grand County*, 967 F.2d 362, 368 (10th

3

Cir. 1992) (noting that the plaintiff "had several pretermination opportunities to discuss her potential termination with the new county attorney and other county officials"). At least one court, however, has approved of a hearing that lasted no more than a few minutes. *See Powell v. Mikulecky*, 891 F.2d 1454, 1455 (10th Cir. 1989). In *Powell*, the Tenth Circuit concluded that a plaintiff's right to procedural due process was not violated, even though the plaintiff was asked only two questions during the pre-termination hearing. The court describes the facts as follows:

> [In] June 24, 1986, [Defendant] conferred with [Plaintiff]. . . . [Defendant] asked [Plaintiff] if he had met with the fire chiefs . . . while [Defendant] was on vacation. [Plaintiff] said "yes." [Defendant] asked [Plaintiff] if [Plaintiff] and others had asked them not to sign a mutual aid agreement. [Plaintiff] responded: "in the form that we had heard it would be, yes." At that point, [Defendant] informed [Plaintiff] that he was discharged, effective immediately.

*Id*. The court explained that even this brief meeting provided adequate due process, because an employee is only entitled to three elements under *Loudermill*: (1) notice (satisfied during the face-to-face meeting); (2) an opportunity to respond (the plaintiff had responded "yes"); and (3) an explanation of the employer's evidence if such an explanation is necessary for the employee to understand or refute the charges (although the defendant had not explained the basis for his suspicions, the plaintiff had not asked). *See id*. at 1459; *see also Lusher v. City of Mansfield*, No. 1:05-CV-1754, 2007 U.S. Dist. LEXIS 16772, at *28-29 (N.D. Ohio Mar. 8, 2007), *aff'd* 279 Fed. Appx. 327 (2008) (per curiam) ("The "pretermination opportunity to respond is not required to be an elaborate opportunity to respond but an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true." (citing *Day v. City of Southfield*, No. 94-1119, 1995 U.S. App. LEXIS 19948, at *13 (6th Cir. July 21, 1995))); *accord Marrero-Gutierrez v. Molina*, 491 F.3d 1, 8 (1st Cir. 2007). The Tenth Circuit later made clear, however, that such a brief meeting is only appropriate if a plaintiff actually concedes the charges against him. *See Lovingier v. City of Black Hawk*, No. 98-1133, 1999 U.S. App. LEXIS 29752, at *10-11 (10th Cir. Colo. 1999)

4

(explaining that when an employee does not concede the grounds for termination, she is entitled to greater opportunity to respond).

While there is admittedly limited precedent concerning such a brief hearing, there do not appear to be any cases in opposition to *Powell*. It is clear, moreover, that "the critical inquiry [when determining whether a pre-termination proceeding comported with due process] . . . is whether the charges [were] accurate and the employee underst[ood] them, not whether the employee . . . had a sufficient amount of time to fully prepare." *Lusher*, 2007 U.S. Dist. LEXIS 16772, at *25. In sum, procedural due process only requires that an employee be given the opportunity to correct any misunderstanding of the facts giving rise to termination. *See id*.

### D. Analysis

As explained in detail below, this case is somewhat straight forward. Because Martinez admitted to making one of the statements that provided the basis for her termination, she was not constitutionally entitled to additional process prior to that termination. It is critical to understand that the Court does not, and has not been asked to, conclude whether Martinez's termination was substantively reasonable, or whether she is entitled to reinstatement and back-pay under Ohio law. The Count finds only that even the briefest meeting can, under these circumstances, provide the required constitutional pre-termination safeguards so long as there are comprehensive post-termination procedures available.

## II. FINDINGS OF FACT

1. Martinez was employed by the Recorder's Office. (Complaint at ¶ 6 (Doc. 1); Answer at ¶ 6 (Doc. 10).)

2. The Recorder's Office is a public agency responsible for the recording of all documents relating to land, mortgages, and leases, as well as a variety of other legal documents, such as living wills. (Hrg. Tr. at 41:20 – 42:4.)

3. On August 20, 2001, Martinez began work for the Recorder's Office as a cashier. (*Id*.) She was promoted to a cashier department supervisor in 2007. (Hrg. Tr. Of March 5, 2009 ("Hrg. Tr.") at 123:14-20.)

4. In the course of her duties, Martinez regularly interacted with and was exposed to members of the public. (Hrg. Tr. at 42:9-15.)

5. Martinez was a classified civil service employee during the time relevant to this litigation. (Complaint at ¶ 8; Answer at ¶ 8.)

6. On July 1, 2008, Lillian J. Greene ("Greene") was appointed to serve as the Cuyahoga County Recorder ("Recorder"). (Hrg. Tr. at 41:4-8.) She was then elected to this position on November 4, 2008. (*Id.* at 41:9-11.)

7. The Recorder is responsible for supervision of the Recorder's office, which includes the authority to hire and fire employees. (*Id.* at 21:18-22:19.)

8. Prior to her appointment as Recorder, Greene had been a Cuyahoga County Court of Common Pleas Judge for over 20 years. (*Id.* at 41:15-17.)

9. On November 4, 2008, Barack Hussein Obama was elected President of the United States.

10. Prior to lunch on November 6, 2008, Gibson reported that he had overheard a member of the public state that a cashier department supervisor had made a negative comment about blacks in the White House. (*Id.* at 42:16-44:23.) Gibson believed that the member of the public was referring to Martinez. (*Id.* at 44:8-12.)

11. Very shortly following that conversation, Petro told Greene that Martinez had said "How do they expect one black man to run the White House if [eleven] of them can't run White Castle." (*Id.* at 44:17-45:5; Ex. 1002.)

12. Later, Mack told Greene that Martinez had also said that "the White House would now be called the Black House." (Ex. 1003.)

13. Green asked Gibson, Petro, and Mack to write incident reports explaining what each of them had heard, and they did so. (County's Br. of June 4, 2009 at 10; Exs. 1001-1003.)

14. Greene and Walsh reviewed the Human Resource manual to determine the consequences for Martinez's alleged behavior. (Hrg. Tr. 98:1 – 99:3.)

15. Greene then decided to meet with Martinez in order to ask Martinez about these allegations. (Hrg. Tr. at 48:7-11.) Prior to that meeting, Greene did not review Martinez's employment record. (*Id.* at 36:19-24.)

16. Greene prepared a termination letter prior to that meeting, although Green had not definitively determined whether Martinez would be fired.  (*Id*. at 34:16-22.)  According to that letter, Martinez was to be terminated because she:
    a. Made racially derogatory remarks in The Cashier's area;
    b. Made racially derogatory remarks that were overheard by customers;
    c. Made racially derogatory remarks to co-workers; and
    d. Committed insubordination, given that Greene is black.
    (Pl. Ex. 3.)

17. When Martinez returned from lunch, she was summon to a meeting in Greene's office.  (*Id*. at 48:7-18.)  She was not told the reason for the meeting in advance.  (*Id*. 130:13-15.)  Two other County employees, including Walsh, also attended the meeting.  (*Id*. at 48:19-49:2.)

18. Martinez entered Greene's office at 13:30:50.  (Stipulation of Parties ("Stip.") (Doc. 28).)

19. Green told Martinez about the Gibson, Petro, and Mack reports.  (Hrg. Tr. at 49:3-6.)  Martinez was not, however, handed a copy of those reports.  (*Id*. at 111:21-24.)

20. Greene asked Martinez whether it was true that Martinez had said, "Well, I guess the White House will now be called the Black House."  (*Id*. at 31:3-19.)  Martinez replied that she had not.  (*Id*.)

21. Greene then asked Martinez whether it was true that Martinez had said "Eleven of them [Blacks] could not manage White Castle, so how do they expect one to manage the White House?" (*Id*. at 32:15-21.)  Martinez replied that she had.  (*Id*. at 32:14-21; 99:24-100:14.)[1]

22. Greene asked Martinez why Martinez had made that statement.  (*Id*. at 32:22-33:20.)  Martinez said that she did not see anything wrong with the statement that she [Martinez] had made.  (*Id*.)  Martinez also stated that she [Martinez] was not a racist and that she [Martinez] had Blacks in her family.  (*Id*.)

23. Greene determined that Martinez should be fired because Martinez made a racially derogatory statement where members of the public would be able to hear that statement, and because Martinez did not believe there was anything wrong with what Martinez had said.  (*Id*.  at 51:2-8.)

24. Greene told Martinez that Martinez's statement was racially derogatory and would not be tolerated in an office where members of the public interact with County personnel.  (*Id*. at 49:3-50:3.)  Greene then handed Martinez the previously-prepared letter of termination.  (*Id*.)

---

[1] Martinez claimed at trial that she only admitted to Green that she had made a comment about "White Castle," not that she had made this <u>specific</u> comment about White Castle.  Martinez does not deny that the comment made in the work place was the one referenced in the incident reports, however.  There are, moreover, witnesses other than Martinez and Green to the pretermination hearing who recall references to the entire text of the comment during that meeting.  Having heard all of the testimony and having had the opportunity to assess the credibility of the witnesses, the Court finds that Martinez was asked about the comment in its entirety and admitted to making the comment in its entirety.

7

25. Prior to firing Martinez, Greene had never fired any County Recorder employee or held a pre-termination hearing for any reason. (Hrg. Tr. at 22:11-19.)

26. Martinez left Greene's office, approximately two minutes and fifty-four seconds after entering, at 13:33:44. (Stip.)

27. The County Recorder contends that the above procedure was a proper pre-termination hearing, whereas Martinez contends that it was not.

28. Had Martinez been given more time to respond, she would have explained that, when making the "white castle" statement, she was repeating or paraphrasing something she had heard on the radio. (Hrg. Tr. 130:24-131:7.)

29. Martinez has appealed her termination to the Ohio State Personnel Board of Review. As of the trial in this matter, that appeal was still pending.

## III. CONCLUSIONS OF LAW

1. Under Ohio law, an employee in the classified service may be terminated for the grounds set forth in Ohio Revised Code Section 124.34. An employee in the classified service who has been terminated may appeal the termination to the Ohio State Personnel Board of Review pursuant to Ohio Revised Code Section 124.34(B).

2. An appeal to the Ohio State Personnel Board of Review provides an employee with a full post-termination administrative review by neutral reviewers. *See, e.g.*, *Loudermill*, 470 U.S. at 547-548 (noting that the wait for post-termination proceedings under Ohio law does not give rise to heightened pre-termination requirements); *Collyer v. Darling*, 98 F.3d 211, 217 (6th Cir. 1996) (noting that back-pay is available under Ohio law); *State ex rel. Johnson v. Ohio Dep't of Rehab. & Corr.*, NO. 2000-04-014, 2001 Ohio App. LEXIS 2152, at *1 (Ohio Ct. App. May 14, 2001) (noting that reinstatement is available under Ohio law). Furthermore, a final order of the Ohio State Personnel Board of Review is subject to judicial review by way of appeal to the Ohio Court of Common Pleas pursuant to Ohio Administrative Code Sections 124-15-06 thru 124-15-08 and is governed by the provisions of Chapters 119 and 124 of the Ohio Revised Code.

3. Martinez was a classified civil service employee who could only be discharged for cause and after being afforded a due process hearing (the "pre-termination hearing" or "pre-termination meeting").

4. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, an employee in the classified service is entitled to receive pre-termination notice and an opportunity to be heard. *See Loudermill*, 470 U.S. at 546. That case explained:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

8

present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id*. (citations omitted).

5. The pre-termination hearing, though necessary, need not be elaborate. *Id*. at 545.  Indeed:

    [T]he pretermination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

    *Id*. at 545-46; *see also Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399 (6th Cir. 1992) ("Even if [Plaintiff] had not been told in these circumstances exactly what the meeting was going to be about, or had not been given a detailed opportunity to respond to the charges presented against him, that state of affairs would be insufficient to justify denial of summary judgment.").  As the Tenth Circuit has explained:

    The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted.  The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the posttermination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee.  The idea of conducting two identical hearings runs counter to traditional principles of adjudication.

    *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989).

6. The "pretermination opportunity to respond is not required to be an elaborate opportunity to respond but an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true." *Lusher v. City of Cleveland*, No. 1:05CV1754, 2007 U.S. Dist. LEXIS 16772, at *28-29 (N.D. Ohio, Mar 8, 2007), *aff'd* 279 Fed. Appx. 327 (6th Cir. 2008) (citing *Day v. City of Southfield*, No. 94-1119, 1995 U.S. App. LEXIS 19948, at *13 (6th Cir. July 21, 1995)); *see also Marrero-Gutierrez v. Molina*, 491 F.3d 1, 8 (1st Cir. 2007).

7. When, as here, there are comprehensive post-termination proceedings available, "a plaintiff alleging a due process violation . . . must show that he was not provided the <u>most basic</u> notice of the charges, description of the evidence against him, and some opportunity to tell his side of the story." *Hilbert v. Ohio Dep't of Rehab. & Corr.*, 121 Fed. Appx. 104, 115 (6th Cir. 2005) (emphasis added); *see also Dean v. City of Bay City*, 239 Fed. Appx. 107, 113 (6th Cir. 2007) ("With respect to the pre-termination due process, the Sixth Circuit simply requires notice and an opportunity to present his or her side of the story to the official responsible for the termination." (citing *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004); *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990)).)

8. A pre-termination hearing may be exceedingly brief if the employee concedes the factual allegations that provide the grounds for termination and if adequate post-termination procedures are in place. *See Powell*, 891 F.2d at 1454; *Lusher*, 2007 U.S. Dist. LEXIS 16772 at *27-29; *see also Coleman v. Reed*, 147 F.3d 751, 754 (8th Cir. 1998); *cf. Lovingier v. City of Black Hawk*, No. 98-1133, 1999 U.S. App. LEXIS 29752, at *10-11 (10th Cir. Colo. 1999) (explaining that when an employee does not concede the grounds for termination, she is entitled to greater opportunity to respond). In such a situation, a plaintiff is not entitled to the "opportunity to conduct discovery, present evidence and witnesses, and confront witnesses against him." *Michalowicz*, 528 F.3d at 537. Indeed, "only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a tenured public employee." *Id.* at 534. Furthermore, in these circumstances, "there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside. . . . To demonstrate [that the bias of the hearing officer deprived the terminated employee of her due process rights], the plaintiff would have to show that the alleged bias deprived him of the opportunity to put his facts before the decisionmaker, or that there was an[] error of primary facts in the grounds used for termination that could be explained only by bias. *Jackson v. Norman*, 264 Fed. Appx. 17, 19 (1st Cir. 2008) (citation omitted); *Farhat*, 370 F.3d at 595 (6th Cir. 2004).

9. This Court has previously relied on cases such as *Hilbert* and *Powell* as clarifying the appropriate standard by which to evaluate the constitutionality of pre-termination proceedings. *See Lusher*, 2007 U.S. Dist. LEXIS 16772 at *27-29. This Court held:

   > [A] pretermination hearing should only permit an employee to clarify an error or mistake on the part of the employer, not to collect evidence and engage in an elaborate adversarial procedure.

   *Id*. at *28; *see also Lusher,* 279 Fed. Appx. 327 ("For the reasons set forth in the Opinion and Order of the district court dated March 8, 2007, the judgment of the district court is AFFIRMED." (emphasis in origional)). In the absence of further guidance from the Supreme Court, the Sixth Circuit, or other circuit courts, this Court continues to believe that it is bound to hold that procedural due process requires only notice and the opportunity to clarify an error or mistake during a pre-termination hearing.[2] Procedural due process is not violated when an employee concedes the charges against her, even when the employee has a legitimate argument that those charges should not lead to termination, so long as fuller and more comprehensive post-termination proceedings are available. *Powell*, 891 F.2d at 1454; *Lusher*, 2007 U.S. Dist. LEXIS 16772 at *27-29.

10. While the pre-termination meeting in this case was <u>exceedingly</u> brief, Martinez's admission that she made at least one of the reported statements confirmed that there were reasonable grounds to terminate her employment.

11. The post-termination administrative review available pursuant to Ohio law is comprehensive, and provides Martinez adequate opportunity to contest her termination. *See, e.g.*, *Loudermill*, 470 U.S. at 547-548; *Collyer*, 98 F.3d at 217; *Johnson*, 2001 Ohio App. LEXIS 2152, at *1 (Ohio Ct. App. May 14, 2001) (noting that reinstatement is available under Ohio law); c*f. Moss v. Bierl*, 134 Fed. Appx. 806, 810 (6th Cir. 2005) ("We emphasize that these limited pre-termination procedures satisfy federal due process requirements only because of the extensive post-termination hearing and remedial provisions provided by Michigan law – including full compensation for lost work time if reinstatement is ordered.").

12. Although a close call given that Greene prepared a letter of termination prior to the meeting, the Court accepts Greene's unequivocal testimony that she did not make a final decision to terminate Martinez until after Martinez admitted to making one of the racist statements and until after Martinez said that she saw nothing wrong with those statements.

---

[2] Indeed, requiring more process might elevate form over function. It is difficult to imagine, for example, how any measure of process might have altered Greene's decision to terminate Martinez once Martinez admitted to making a racist remark and further stated that she saw nothing wrong with having done so. The Court does not necessarily believe that termination of an employee who seems oblivious to the harmful nature of racially-charged remarks is the course of action most likely to further the goal of a post-racial society, or the most understanding path that a supervisor might choose to take, but that is not the question this court is empowered to address.

13. Even if Greene had decided to terminate Martinez prior to the meeting, Martinez still could not assert a procedural due process claim because, in that meeting, Martinez admitted to making the statement for which she was terminated. *See Powell*, 891 F.2d at 1454; *Lusher*, 2007 U.S. Dist. LEXIS 16772 at *27-29; *cf. Lovingier*, 1999 U.S. App. LEXIS 29752, at *10-11.

14. The Recorder's Office did not violate Martinez's procedural due process right to a pre-termination hearing.

This Court, accordingly, finds in favor of the **DEFENDANT**.

**IT IS SO ORDERED.**

                                                **s/Kathleen M. O'Malley**
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: September 16, 2009**